# CARL J. SWANSTROM v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY.

(157 N. W. 976.)

**Grove of trees — destruction of by fire — damages — action to recover — locomotive — sparks from — cause of fire — negligence — error — specifications of — new trial — motion for — grounds for — damages — excessive — jury — passion — prejudice.**

1. In an action to recover damages for the destruction by fire of a grove of trees, which fire was negligently caused by sparks from defendant's locomotive, the specifications of error merely challenge the correctness of the trial court's order denying defendant's motion for a new trial. The sole ground of such motion was that the damages awarded by the jury are excessive and appear to have been given under the influence of passion and prejudice.

Evidence examined and *held* that the specifications are without merit.

Verdict — result of passion — determination of — province of court — evi-
    dence — weighing — grossly and palpably excessive verdict — moral
    sense of justice — presumption of passion — prejudice.

    2. In determining whether the verdict was the result of passion and prejudice,
it is not the province of this court to weigh the evidence further than to
satisfy itself, as a matter of law, whether the jury must have been thus
actuated in assessing the damages, and unless the verdict is so grossly and
palpably excessive as to shock the moral sense of justice and to raise a reason-
able presumption that the jury must have been influenced by passion or
prejudice, an appellate court will not interfere.

Opinion filed April 27, 1916.

Appeal from the District Court of Bottineau County, *A. G. Burr,* J.
From a judgment in plaintiff's favor and from an order denying de-
fendant's motion for a new trial, the latter appeals.

Affirmed.

*John E. Greene* and *Palda, Aaker, & Greene (Alfred H. Bright*
and *John L. Erdall,* of counsel) for appellant.

*Bowen & Adams* for respondent.

FISK, Ch. J. Plaintiff sued to recover damages in the sum of $1,150
alleged to have been sustained by him through a fire negligently started
by sparks emitted from defendant's locomotive on October 23, 1913,
and which fire he alleges destroyed his grove of trees of the value of
$1,000 and his barn of the value of $150. A verdict was rendered in
plaintiff's favor for the sum of $800 for injury to the grove and $20
for the injury to the barn. A motion for a new trial was made upon
the sole ground of alleged excessive damages appearing to have been
given under the influence of passion and prejudice, which motion was
denied, and defendant appeals both from the order and the judgment
entered pursuant to the verdict.

The negligence of the defendant in setting the fire is conceded, and
also that such fire spread to plaintiff's premises causing some injury to
his trees, but it is defendant's contention that the jury in assessing the
damages was manifestly actuated by bias and prejudice. As before
stated, this is appellant's sole ground of complaint, and his specifica-
tions on this appeal will accordingly be restricted to this one ground.

We deem appellant's specifications without merit. While, in view of

the testimony, the award of damages seems to be quite liberal, yet we are not justified in holding, as a matter of law, that it is so excessive as to disclose passion and prejudice on the part of the jury; nor are we justified in holding, as a matter of law, that the verdict is without support in the evidence. In justification of this conclusion, all we need do is to give a summary of the testimony of plaintiff and his witnesses as printed in appellant's brief.

It is as follows:

Carl J. Swanstrom.

I am an unmarried man; I live with my father 2 miles west of Newburg, about 5 miles from my land. On the 23d of October 1913, I was the owner of the southeast quarter of section 21, township 160, range 80, in Bottineau county. I have owned it since about 1902. The Soo railway runs through my land, east and west, pretty close to the middle. I have a grove on my farm, just about in the middle of the quarter. It runs north and south up to the railroad track. In the spring of 1908 I planted about 1,000 trees. During 1909, I planted about 3,000 trees. When planted, they were in height I should judge from 4 to 5 feet. The length of the grove was 80 rods. It begins pretty near the right of way. On the 23d of October a fire started on the right of way and burned southeasterly through my grove, striking the road a little ways from the northwest corner of it, probably about 6 or 7 rods from the northwest corner. It burned right through east. It burned clear through except one corner,—the southwest corner. I should judge there was left unburned a track about half the size of this court room, possibly a little bigger.

The first year I planted trees they were hoed by hand. After I planted trees in 1909, they were all hoed after the last planting. I disked through the grove a couple of times. I don't remember just how I did cultivate them in 1909. One year they got so full of thistles I could not get the horses in. The land is rather light there and the thistles grow very easy. The grove is planted on a kind of a ridge. I disked them in 1910. I am not certain whether I cultivated them in 1911. I know I took good care of them up to the time they got so full of thistles I couldn't get any horses in there. After the fire went through according to what I counted, I am not exactly sure, but my brother and

I tried to get it as close as possible, 3,713 had been burned. I didn't count the trees before the fire. There was not a large number dead before the fire, although there were some right in the center of the grove, perhaps between 200 and 300 trees actually dead before the fire. Most of the trees leaved out this spring, but gradually kept dying out. They didn't all of them live through the summer. The trees I planted were Golden Russian willow, Carolina poplar, white ash, and box elders. The value of the land before the grove was burned was about $4,000. After the fire had passed through the grove, I should judge the value of the land was about $2,700.

Cross-examination: I lived on the farm in the spring and fall. I was not living there at the time of the fire. The rows of trees were about 80 rods long, the rows were 10 feet apart. I don't remember the number of rows. I never counted them. I believe it was eighteen rows. The trees were around 10 feet apart in the rows. I don't know how many rows I planted in 1908. The willows were 4 to 5 feet high. The ash about 2 or 3 feet, box elders 4 or 5, and the Carolina poplars 4 or 5 feet. I don't know how big through they were, whether they were an inch or a quarter of an inch. I know they were over a quarter of an inch. I have no recollection of how large they were through. My recollection is not as good on that as it is on the height. I did not plant any more trees after 1909. I did not plant in or put others in to take the place of those that died. Some of those died, I couldn't say how many, and I couldn't say whether they died the first year or the second year or any other year. The disking between the rows was with an ordinary disk harrow. I never counted the trees before the fire. My brother and I counted them after the fire. The thistles commenced to grow up in them in about the third year, in about 1911. There might have been thistles in there in 1910. I couldn't say whether I disked or harrowed it then. I know I pulled weeds in there that year. Couldn't get in in 1912. There has been nothing done to them since 1911. I thought they were big enough to take care of themselves.

Q. I will ask you if, in the fall of 1913, after this fire had passed through, you would have been willing to accept $2,700 for that farm?

A. I expect that is all I could get.

Q. I am asking you if you would have been willing to accept that amount if you had been offered it?

A. Yes, I would.

The native grass around these trees was 2 and 3 feet high, but not all of it.

Andrew Vang: I know the grove that was on Mr. Swanstrom's land. My house is about 40 rods from the grove. I planted most of the grove myself, helped plant it. When they were planted the trees were between 2 and 6 feet high. The rows were 10 feet apart, and the trees were between 5 and 6 feet apart in the row. I saw the fire as it burned through this grove. I have been through the grove quite often. The trees were mostly all living. I don't know if I saw any dead ones. I did not help cultivate the trees. Might be some of the biggest trees were living after the fire. None of the trees were killed where the fire didn't go through. I think the value of this farm before the fire was about $4,-000.

Q. What would it be worth since the fire went through in its present condition?

A. Oh, it won't be worth, I wouldn't think they would pay, I don't think they will give quite so much for it, $3,500 I guess.

Cross-examination: I went over to see this grove the next day after the fire. I don't know how long before the fire it was that I had been through the grove. I don't remember if it was very many times. I didn't pay very much attention to it. I knew there was a good deal of pretty tall grass in there, and possibly some thistles.

John Haugen: I have quite frequently passed by Swanstrom's place and am familiar with the grove. I saw the fire that burned through this grove. I did not go near the fire at all. After the fire I was up there some time in the fall. Before the fire went through I did not take any particular notice of Mr. Swanstrom's grove. From all appearances it looked like a nice grove. I have not observed it particularly since the fire went through, not any more particularly than I did before. It looks pretty bad. It is no good. The trees that are left look nice. I can't say how many are left. There does not seem there are as many left as there are gone. It is hard for me to say what percentage is left. Before this fire I should say the land was worth $25 an acre, and after the grove was burned I should say about $20 an acre or close to it.

It is apparent that the jury based its assessment of damage to the trees upon the testimony of the witness John Haugen who, so far as the record discloses, was an impartial witness, and who fixed the damage

34 N. D.—10.

at approximately $5 per acre on the entire quarter section. His testimony is very clear and positive, and apparently based upon a fair and impartial consideration of the condition of the grove both prior and subsequent to the fire. At any rate the jury was justified in accepting his estimate of the extent of the injury to the trees. Much of the brief argument of appellant's counsel consists of a discussion of the facts in an attempt to minimize the damage done to the trees, and to discredit the opinions of the witnesses. Such argument would perhaps be 'entitled to weight with the jury, but this court is concerned only with the question of law as to whether the verdict is so excessive as to require a holding that it was arrived at through passion and prejudice, and we feel obliged to answer such question in the negative. It is not our province to review the facts, excepting to the extent of enabling us to determine such question of law. Any views we might entertain as to the merits of the controversy are immaterial, provided the verdict has substantial support in the evidence, which, as above stated, we find it has.

. Finding no error in the record, the judgment in order appealed from are hereby affirmed.

CHRISTIANSON, J., being disqualified, did not participate; HON. W. L. NUESSLE, Judge Sixth Judicial District, sitting in his stead.